USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 09/06/2022

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X
 :
IN RE APPLICATION OF :
Frederico da Costa Pinto :
 :
------------------------------------------------------------------X

21-MC-663 (VEC)

OPINION AND ORDER

VALERIE CAPRONI, United States District Judge:

Petitioner Frederico da Costa Pinto applied pursuant to 28 U.S.C. § 1782 for discovery from Loeb, Block & Partners LLP, its attorneys Yuisa Montaez and Stephen Rasch, ("Respondents") and various financial institutions, Pet., Dkt. 4; the Court granted the application on September 16, 2021, Order, Dkt. 6. Cooper Brazil Country Fund I, LLC, Cooper Omnibus Global Fund, LLC, Humberto da Costa Pinto Jr., and BVF5 Limited ("Intervenors") moved to intervene as the real parties at issue in this case, to vacate the Court's September 16, 2021, Order, to quash the subpoenas, and to stay discovery. Intervenors Mot., Dkt. 21. Respondents also moved to vacate the Court's September 16, 2021, Order, to quash the subpoenas, and to stay discovery.[1] Resp'ts Mot., Dkt. 16.

For the reasons stated below, the motion to intervene is GRANTED. The Respondents' and Intervenors' motion to vacate the Court's September 16, 2021, Order at docket entry 6 granting Petitioner's § 1782 Application and to quash the subpoenas are GRANTED in part. The Respondents' and Intervenors' motions to stay discovery pending resolution of the case are DENIED as moot.

## BACKGROUND

The Costa Pinto Companies were constituents of a Brazilian agricultural organization with large sugarcane and ethanol operations that was originally owned by Humberto Costa Pinto,

---

[1] The financial institutions that were subpoenaed have not moved against the subpoenas.

Sr. and his two sons, Humberto da Costa Pinto Jr. ("Humberto Jr.") and Frederico da Costa Pinto ("Frederico"). Pet. at 2–3. During a period of financial distress that begun in the 1990s, the Costa Pinto Companies accepted investments from Cooper Omnibus Global Fund, LLC and its subsidiary, Cooper Brazil Country Fund I, LLC (collectively "Cooper Fund"). *Id*. As part of the arrangement between Costa Pintos and the Cooper Fund, Frederico and his father transferred their shares in the Costa Pinto Companies to Humberto Jr., who agreed to return the shares once the Cooper Fund was repaid its investment with interest.[2] *Id.* at 3–4, 6.

      The circumstances of that transfer, and what happened thereafter, are the subject of sharp disagreement between the Costa Pinto brothers. Humberto Sr. is now deceased, and the brothers dispute to whom the assets transferred to Humberto Jr. as part of the Cooper Fund deal now belong. Frederico asserts that the transfer was part of a fraudulent scheme orchestrated by Humberto Jr. and the Cooper Fund, which he claims are one and the same. *Id.* at 9–10. Frederico further claims that Humberto Jr. refused to return Frederico's shares after the Costa Pinto Companies brought in additional investors who provided sufficient liquidity that the "Cooper Fund must have received the financial renumeration that would have triggered the return of" the shares that belonged to Frederico and Humberto Sr. *Id.* at 5; *see also id.* at 6–7. Frederico also claims that Humberto Jr., as the beneficial owner of the Cooper Fund, is preventing it from fulfilling its obligation to invest in the Costa Pinto Companies, thereby precluding the conditions that would trigger the return of shares from ever being met. *Id.* at 7–10. Humberto Jr. counters that there was no fraud or contractual breach, and that the conditions triggering the return of the shares have not been met. Resp'ts Mem., Dkt. 17 at 4.

---

[2]     Humberto Jr. disputes that he is required to return the shares that originally belonged to his father. Intervenors Mem., Dkt. 22 at 4 n.2.

In the present matter,[3] Frederico seeks wide-ranging discovery to confirm that Humberto Jr. is the beneficial owner of the Cooper Fund, Pet. at 11, so that Frederico might prove his claim that he is the rightful owner of the shares he transferred to his brother as well as 25% of his father's shares, *see id.* at 10, 13–14. Frederico states that he is actively litigating this claim in Brazilian probate court, *id.* at 10, and in a new action commenced in Brazilian civil court after his § 1782 petition was filed, Pet. Resp. to Intervenors, Dkt. 34 at 3.[4] While Frederico provides few details about this newly-filed action, he states that it is the action he represented in his § 1782 application that he planned to file, specifically: "a civil action for fraud against Humberto Jr. pursuant to Article 186 of the Brazilian Civil Code," Pet. at 13; *see also id.* at 16.[5]

On September 16, 2021, this Court granted Petitioner's § 1782 application. Order, Dkt. 6. Frederico sought authority to pursue discovery of (1) "all non-privileged documents from Loeb Block & Partners and attorneys Yuisa Montañez and Steven Rasch, concerning or relating to Humberto Jr., Paul J. Cicurel,[6] and/or Cooper Fund," Pet. at 18, on the basis that these attorneys assisted Humberto Jr. in orchestrating the allegedly fraudulent scheme, *id.* at 11–12; (2) "all records of transfers from" the Clearing House Payments Company L.L.C. (CHIPS), Bank of America, Citibank, Chase, and Wells Fargo "involving Humberto Jr. as well as any of his four children;" (3) and "any other parties residing or found within the Southern District of New York

---

[3] Petitioner previously sought discovery pursuant to § 1782 from the Cooper Fund and Paul Cicurel in the Southern District of Florida. *See In re da Costa Pinto*, 2019 WL 3409488 (S.D. Fla. May 16, 2019).

[4] Respondents claim that Petitioner actually seeks discovery to pursue his claims in the United States. *See* Resp'ts Mem. of Law, Dkt. 17 at 1–2, 6. That would, of course, be outside the scope of § 1782, which applies only to discovery "for use in a proceeding in a foreign or international tribunal." 28 U.S.C. § 1782(a).

[5] Petitioner stated for the first time in his supplemental brief that, in addition to the Brazilian probate case concerning Humberto Sr.'s assets, *see* Pet., Dkt. 4 at 10; Pet. Ex. 7, Dkt. 4, and the newly-filed civil suit, Humberto Jr. "pressed criminal charges for defamation" against Petitioner for statements related to the instant claims. Petitioner has not indicated whether that criminal suit is still pending. Pl. Supp. Br., Dkt. 38 at 1 (emphasis omitted). Petitioner also represents that Humberto Jr. has pressed criminal charges against him once before but does not indicate whether the prior criminal case is still pending. *Id.* at 1–2.

[6] The Petitioner states that Mr. Cicurel is "the manager and representative for Cooper Fund." Pet. at 11.

having additional documents or testimony" that might be relevant to Petitioner's claims if, after Petitioner files a notice of his intent to subpoena the additional party, there are no objections, *id.* at 14. Frederico wanted to serve subpoenas on the financial institutions, which "process most of the foreign wire transfers in the United States, [making] it highly probable that Humberto Jr.'s transactions in relation to Paul J. Cicurel and/or Cooper Fund were processed by one of these banks." *Id.* at 13. Similarly, he wanted to subpoena CHIPS because financial institutions use its payment system for "around 95% of the foreign wire transfers." *Id.*

On February 7, 2022, the Respondents moved to vacate the Court's September 16, 2021, Order, to quash the subpoenas, and to stay discovery. Resp'ts Mot. On February 8, 2022, Humberto da Costa Pinto Junior, Cooper Brazil Country Fund I, LLC, Cooper Omnibus Global Fund, LLC, and BVF5 Limited[7] moved to intervene and also to vacate the Court's September 16, 2021, Order, to quash the subpoenas, and to stay discovery. Intervenors Mot., Dkt. 21.

In Petitioner's reply, filed on April 11, 2022, Petitioner stated that he had that day filed with the 44th Civil Chamber of the Civil Court in Rio de Janeiro the "reasonably contemplated civil action" referenced in the § 1782 Application. Pet. Resp. to Intervenors at 3. The Petitioner further stated that he would "file a translation of the docket sheet identifying the case number and chamber as soon as it is available." *Id.* at 3 n.3. After the Petitioner failed to provide further details regarding the newly-filed action, the Court ordered the parties to submit supplemental briefing regarding the impact of the newly-filed Brazilian civil proceeding on Petitioner's § 1782 Application. Order, Dkt. 37. In their supplemental briefing, Respondents and Intervenors provided a translated version of a decision granting Petitioner's motion to seal the proceedings in

---

[7] Petitioner alleges that BVF5 is "the sole member of Cooper Fund." Pet. at 9.

the newly-filed civil action, which listed each Intervenor as a defendant.[8]  Resp'ts Supp. Br. Ex. 1, Dkt. 39 at 1.

## DISCUSSION

### I. The Motion to Intervene is Granted

Pursuant to Federal Rule of Civil Procedure 24(a)(2), a court "must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."  To intervene either as of right or with permission,[9] "an applicant must (1) timely file an application, (2) show an interest in the action, (3) demonstrate that the interest may be impaired by the disposition of the action, and (4) show that the interest is not protected adequately by the parties to the action. . . .  Failure to satisfy *any one* of these four requirements is a sufficient ground to deny the application." *Floyd v. City of New York*, 770 F.3d 1051, 1057 (2d Cir. 2014) (cleaned up).  "While accepting as true the non-conclusory allegations of the motion, courts applying Rule 24 must be mindful that each intervention case is highly fact specific and tends to resist comparison to prior cases." *Kamdem-Ouaffo v. Pepsico, Inc.*, 314 F.R.D. 130, 134 (S.D.N.Y. 2016) (internal citation and quotation marks omitted).

#### A. The Motion to Intervene is Timely

Whether a motion is timely "defies precise definition [but] is not confined strictly to chronology." *Floyd*, 770 F.3d at 1058 (quoting *United States v. Pitney Bowes, Inc.*, 25 F.3d 66,

---

[8] According to the Brazilian court's order filed by Respondents and Intervenors, Frederico sued eight defendants, including Humberto Jr., Cooper Fund Omnibus Global Fund LLC, Cooper Brazil Country Fund I LLC, and BVF5 Limited.  Resp'ts Supp. Br. Ex. 1, Dkt. 39.  Petitioner provided no further details about the newly-filed civil action.  Pet. Supp. Br., Dkt. 38.

[9] The Intervenors urge the Court to grant their motion to intervene as of right and contend that, even if the Court finds that they are not entitled to intervene as of right, the Court should allow them permissively to intervene.  Intervenors Mem. at 8.  Because the Court finds that the Intervenors are entitled to intervene as of right, it does not reach the question of whether permissive intervention would be appropriate.

70 (2d Cir. 1994)) (internal quotation marks omitted).  The determination is flexible and "entrusted to the district judge's sound discretion." *Id.* (quoting *United States v. Yonkers Bd. of Educ.*, 801 F.2d 593, 594–95 (2d Cir. 1986)).  A court considers "(a) the length of time the applicant knew or should have known of its interest before making the motion; (b) prejudice to existing parties resulting from the applicant's delay; (c) prejudice to the applicant if the motion is denied; and (d) the presence of unusual circumstances militating for or against a finding of timeliness." *Id.* (quoting *MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d 377, 390 (2d Cir. 2006)).

Although the motion to intervene was filed five months after the Petitioner's § 1782 application was filed, the Court finds that the motion to intervene was timely.  The Intervenors stated their intention to intervene via counsel on November 23, 2021, approximately two months after the Court granted Petitioner's § 1782 application and within the time set by the Court within which any motion to vacate or quash was to be made.  *See* Resp'ts Letter, Dkt. 10 at 1.  The subsequent delay was the result of the parties' unsuccessful attempts to resolve the issues.  *See id.*; Resp'ts Letter, Dkt. 12 at 1; Resp'ts Letter, Dkt. 14 at 1.  Accordingly, the risk of prejudice to Respondents and Petitioner, who has been litigating this dispute with Paul Cicurel and Intervenor Cooper Fund for several years before the petition was filed, *see In re da Costa Pinto*, 2019 WL 3409488, at *1 (S.D. Fla. May 16, 2019), is minimal.  In contrast, the risk of prejudice to the Intervenors, whose financial transactions and confidential communications with counsel would be provided to an adversarial party through discovery, would be significant if the Court were to deny their motion to intervene.

### B. The Intervenors Have an Interest in this Action that Would be Impaired by Allowing Petitioner to Proceed with Discovery

"For an interest to be cognizable under Rule 24, it must be direct, substantial, and legally protectable" such that "an interest that is remote from the subject matter of the proceeding, or

6

that is contingent upon the occurrence of a sequence of events before it becomes colorable, will not satisfy the rule." *Floyd*, 770 F.3d at 1060 (cleaned up); *see also Brennan v. N.Y.C. Bd. of Educ.*, 260 F.3d 123, 129 (2d Cir. 2001).

The Intervenors have an "interest relating to the property or transaction that is the subject of the action" because, as the parties that engaged in the disputed transaction, they have privacy interests in the financial and legal documents that Petitioner hopes to use against them in Brazilian legal proceedings. Fed. R. Civ. P. 24(a)(2); *see also, e.g.*, *In re Hornbeam Corp.*, 2015 WL 13647606, at *3 (S.D.N.Y. Sept. 17, 2015), *aff'd*, 722 F. App'x 7 (2d Cir. 2018) (a nonparty may permissively intervene to protect its confidentiality interests or when a party seeks to subpoena information to be used against the nonparty) (citing *AT&T Corp. v. Sprint Corp.*, 407 F.3d 560, 562 (2d Cir. 2005)); *In re Reyes*, 2019 WL 6170901, at *2 (S.D.N.Y. Nov. 20, 2019) (same) (citing *App. of Sarrio, S.A.*, 119 F.3d 143, 148 (2d Cir. 1997)). Indeed, each Intervenor was named as a defendant in the Brazilian civil suit that Petitioner filed on May 1, 2022. *See* Resp'ts Supp. Br. Ex. 1.

### C. Respondents Do Not Adequately Protect Intervenors' Interests

"Determination of the adequacy of existing representation necessarily involves an assessment of factors which are within the discretion of the district court." *U.S. Postal Serv. v. Brennan*, 579 F.2d 188, 191 (2d Cir. 1978) (citations omitted). A nonparty's burden of demonstrating that its interests "would not be protected adequately by the parties to the action" is higher "when the movant seeks the same relief as one of the parties to the action," *Royal Park Inv. SA/NV v. U.S. Bank Nat'l Ass'n*, 356 F. Supp. 3d 287, 297–98 (S.D.N.Y. 2018) (citing *Wash. Elec. Co-op, Inc. v. Mass. Mun. Wholesale Elec. Co.*, 922 F.2d 92, 98 (2d Cir. 1990)). While the Intervenors partly seek the same relief as Respondents, including vacatur of the

Court's previous order granting the § 1782 Application, the Court nonetheless finds that the named Respondents do not adequately protect the Intervenors' interests.

Respondents' interests overlap with the Intervenors' interests to the extent that Respondents are motivated to oppose Petitioner's request to seek documents produced by Respondents in the course of their attorney-client relationship with the Cooper Fund. Indeed, both the Respondents and the Intervenors seek to quash the subpoenas that were served on Respondents. *See* Resp'ts Mem. at 1; Intervenors Mem., Dkt. 22 at 1. Intervenors, however, also seek to quash the subpoenas that would compel various financial institutions to provide information about the Intervenors' financial transactions. Intervenors Mem. at 1. Because the Respondents do not make independent arguments regarding those subpoenas but only join the Intervenors' motion, *see* Resp't Mem. at 1, the Intervenors' interests are "not protected adequately by the parties to the action." *Floyd*, 770 F.3d at 1057 (internal quotation omitted).[10] Accordingly, the Court grants the Intervenors' motion to intervene as of right.

## II. The Court's Order Granting Petitioner's § 1782 Application Is Vacated in Part

Pursuant to § 1782, "[t]he district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . ." 28 U.S.C. § 1782(a). A district court is authorized to grant a request under § 1782 only if the applicant has met three statutory requirements: (1) discovery is sought from a person or entity residing or found in the district; (2) discovery is for use in a proceeding before a foreign tribunal; and (3) the applicant is an interested person before such foreign tribunal. *See Mees v. Buiter*, 793 F.3d 291, 297 (2d Cir. 2015).

---

[10] Petitioner concedes that the Intervenors have a right to intervene in the present case. Pet. Resp. to Intervenors, Dkt. 34 at 5 n.4.

Once the district court has determined that a petition for discovery in aid of a foreign proceeding satisfies the § 1782 factors, it must apply the discretionary factors to determine whether to grant the § 1782 petition. *See In re Edelman*, 295 F.3d 171, 181 (2d Cir. 2002) ("Congress planned for district courts to exercise broad discretion over the issuance of discovery orders pursuant to § 1782(a) — both over whether to grant a discovery order and, if so, what limits to place on that discovery."). In exercising its discretion, a district court should consider the petition "in light of the twin aims of the statute: providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." *Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 84 (2d Cir. 2004) (cleaned up). In *Intel Corp. v. Advanced Micro Devices, Inc.*, the Supreme Court announced four factors to guide a district court's consideration: (1) whether the person from whom discovery is sought is a participant in the foreign proceeding, such that the foreign tribunal can itself order the person to produce evidence; (2) whether the foreign tribunal is receptive to U.S. court assistance; (3) whether the request seeks to circumvent foreign proof-taking restrictions; and (4) whether the request is unduly intrusive or burdensome. *See* 542 U.S. 241, 264–65 (2004).

### A. The § 1782 Petition Satisfies the Statutory Requirements

Neither the Respondents nor the Intervenors dispute that the first statutory factor is satisfied because the parties from whom the Petitioner seek discovery are found within this district. Pet. at 19–20.

Petitioner seeks discovery "for use" in a foreign proceeding. A § 1782 application satisfies the "for use" requirement where the materials sought "are to be used at some stage of a foreign proceeding." *Mees*, 793 F.3d at 295. Where a foreign proceeding has not yet been initiated, discovery may still be "for use" in that proceeding "so long as the proceeding is within

9

reasonable contemplation." *Id.* The Petition states that, at the time of filing, Frederico intended to initiate a "civil action for fraud-related claims . . . in the Civil Court for the State of Rio de Janeiro, Brazil." Pet. at 1. Respondents and Intervenors argue that, nearly two decades after the family's transaction with the Cooper Fund, any legal disputes are no longer within "reasonable contemplation." Resp'ts Mem. of Law, Dkt. 17 at 8; *see also* Intervenors' Mem. of Law, Dkt. 22 at 12–14. Petitioner has, however, since filed the civil lawsuit that was purportedly contemplated at the time the Petition was filed and is pursuing several of the claims described in the Petition.[11] *See* Pet. Resp. to Intervenors at 3; Resp'ts Supp. Br. Ex. 1. Because Petitioner is currently involved in at least one foreign proceeding[12] concerning the dispute as to which he seeks discovery, *see* Pet. Resp. to Intervenors at 3, he has adequately demonstrated that he aims to use the discovery materials sought in a foreign proceeding. Were Petitioner to obtain the requested discovery materials, they "could be . . . used to increase [Petitioner's] chance of success" in the Brazilian suit as part of Petitioner's claim that Humberto Jr. and the Cooper Fund committed fraud. *In re Asia Mar. Pac. Ltd.*, 253 F. Supp. 3d 701, 707 (S.D.N.Y. 2015) (internal quotation omitted).

As a plaintiff in the Brazilian civil suit regarding the same dispute, Petitioner is clearly an "interested person." *See Intel Corp.*, 542 U.S. at 256 (litigants in foreign proceedings are interested parties for the purposes of § 1782). Petitioner need not demonstrate that he holds a

---

[11]    Although the Court finds that the discovery sought is "for use" in a foreign proceeding, Petitioner waited to seek discovery and initiate the Brazilian civil suit for nearly eight years after he unsuccessfully asked Humberto Jr. for information regarding the expected return of the shares transferred pursuant to the Cooper Fund deal, *see* Pet. Ex. 2(C), and this delay weighs against Petitioner's discovery request. *See Nascimento v. Faria*, 600 F. App'x 811, 812 (2d Cir. 2015) (finding that excessive delay suggested that § 1782 did not provide "an efficient means of assistance" to foreign proceedings in Brazil); *Certain Funds, Accts. and/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 116, 124 (2d Cir. 2015) (five-year delay between events and filing of petitioner's § 1782 application suggested that "the anticipated proceedings were not within reasonable contemplation," *id.* at 124).

[12]    Respondents and Intervenors dispute whether the probate case is still active. *See* Intervenors Mem. at 15; Resp'ts Reply, Dkt. 35 at 6 n.4.

winning claim;[13] it is enough that he has demonstrated an interest in obtaining discovery in the United States because of his participation in foreign proceedings. *See id.* at 256–57.

### B.  The *Intel* Factors Weigh in Favor of Vacatur in Part

Because the real parties in interest, Humberto Jr. and the Cooper Fund, are Petitioner's adversaries in at least one Brazilian legal proceeding[14] and Petitioner's requests for discovery from Respondents are impermissibly broad, the Court finds that the *Intel* factors weigh in favor of vacating the Court's September 16, 2021, Order granting Petitioner's § 1782 Application as to Respondents.

#### 1.  The Real Parties from Whom Documents are Sought are Petitioner's Adversaries in the Brazilian Civil Suit

The first category of discovery sought from Respondents is "all non-privileged documents from Loeb Block & Partners and attorneys Yuisa Montañez and Steven Rasch concerning or relating to Humberto Jr., Paul J. Cicurel, and/or Cooper Fund," Pet. at 14; those documents solely concern the activities of Humberto Jr. and the Cooper Fund, which is Respondents' client, *id.* at 11.  While none of the Respondents from whom discovery is sought is a named party in the Brazilian civil proceedings, the Second Circuit has repeatedly held that courts appropriately exercise their discretion in refusing to permit a foreign litigant to use § 1782 to seek discovery from attorneys in the United States regarding the activities of their clients, who are the petitioner's adversaries in foreign litigation.  *See Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*, 895 F.3d 238, 245 (2d Cir. 2018).  "[W]hen the real party from whom documents are sought . . . is involved in foreign proceedings, the first *Intel* factor counsels

---

[13]  While Respondents and Intervenors argue that Petitioner's Brazilian claims are time-barred, *see* Resp'ts Mem. at 3; Intervenors Mem. at 16, the Court declines to wade into the details of Brazilian law based on possibly "biased interpretations of foreign law," *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1099 (2d Cir. 1995).

[14]  Neither the Respondents nor Intervenors dispute Petitioner's assertion that Brazilian courts would be receptive to assistance from the United States courts.  *See* Pet. at 23.

against granting a Section 1782 petition seeking documents from U.S. counsel" because the "petitioner's need for § 1782 help 'is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad.'" *Id.* (quoting *Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 84 (2d Cir. 2004)).

Petitioner argues that, without "evidence to conclusively establish that Humberto is the exclusive and beneficial owner of Cooper Fund," the first *Intel* factor does not weigh against permitting Petitioner to proceed with discovery. Pet. Supp. Br. at 1. But even without such proof, the discovery sought from Respondents is wholly focused on the activities of Humberto Jr. and the Cooper Fund, both of whom are Petitioner's adversaries in the Brazilian civil suit Petitioner recently filed.[15] *See* Resp'ts Supp. Br. Ex. 1. Accordingly, the Court finds that the first *Intel* factor weighs in favor of vacatur as to Respondents.

### 2. The Petition Does Not Seek to Circumvent Brazilian Restrictions on Discovery

The third *Intel* factor is narrowly construed and only bears on a court's decision to grant discovery requests when there are rules in the foreign jurisdiction that "*prohibit* the acquisition or use of certain materials," not when there are "rules that *fail to facilitate* investigation of claims by empowering parties to require their adversarial and non-party witnesses to provide information." *See Mees*, 793 F.3d at 303 n.20 (emphasis in original). "[C]ourts routinely grant § 1782 applications where the discovery sought might not be available in the foreign legal

---

[15] There is some dispute over whether the newly-filed civil case is still active, as it is unclear whether Petitioner has paid the required filing fee in Brazilian civil court. *See* Resp'ts Supp. Br. Ex. 1. Petitioner's failure to do so would only be further evidence that permitting Petitioner to seek discovery in this district would not provide an "efficient means of assistance to participants in international litigation in our federal courts." *Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 84 (2d Cir. 2004).

system, but is not explicitly prohibited from being acquired by way of a § 1782 application." *In re Tiberius Grp. AG*, 2020 WL 1140784, at *5 (S.D.N.Y. Mar. 6, 2020).[16]

Respondents and Intervenors argue that the Petition implicates the third *Intel* factor because it attempts to circumvent Brazilian rules regarding attorney-client privilege. *See* Resp'ts Mem. at 14–15; Intervenors Mem. at 17–19. Because Petitioner only seeks "non-privileged" materials, Pet. at 18, any applicable Brazilian proof-gathering restrictions related to attorney-client privilege are not implicated.

### 3. Petitioner's Discovery Requests to Respondents are Overly Intrusive and Burdensome

Each of Petitioner's sweeping discovery requests to the Respondents is overly intrusive and highly burdensome. In determining whether the scope of a discovery request is appropriate, courts apply Federal Rule of Civil Procedure 26, which requires courts to consider, *inter alia*, "whether the burden or expense of the proposed discovery outweighs its likely benefit," Fed. R. Civ. P. 26(b)(1). Although district courts must consider whether an overly broad discovery request "could be cured through a limited grant of discovery," *Mees*, 793 F.3d at 302, this defect "cannot always be cured," *id.* at 302 n.19. While Petitioner argues that the broad scope of discovery is appropriate given the complexity of the alleged fraud scheme, *see* Pet. Resp. to Resp'ts, Dkt. 31 at 4 n.3, Petitioner has not demonstrated that the benefit of the proposed discovery would outweigh the significant burden imposed on the Respondents.

---

[16] Petitioner contends that "Brazil is a civil law country where there is no fact discovery and specifically no exchange of document production between the parties," Pet. Supp. Br. at 2 (alterations omitted), while Respondents argue that the Brazilian legal system has a phase of discovery akin to American fact discovery, Resp't Supp. Br. at 2 (citing Lara Decl., Dkt. 24-8 at 1). Neither a party's representation about the content of foreign law nor a party's submission of a foreign legal expert's opinion about the content of foreign law is the type of "authoritative proof" of proof-gathering restrictions that the Court may consider. *See Euromepa S.A.*, 51 F.3d at 1100. In any case, restrictions that "fail to facilitate" fact discovery would not fall within the ambit of the third *Intel* factor. *Mees v. Buiter*, 793 F.3d 291, 303 n.20 (2d Cir. 2015) (emphasis omitted). "[I]f district courts were free to refuse discovery based upon its unavailability in a foreign court . . . § 1782 would be irrelevant to much international litigation, frustrating its underlying purposes." *Id.* at 302 (quoting *Metallgesellschaft AG v. Hodapp*, 121 F.3d 77, 80 (2d Cir. 1997)).

13

Petitioner's request for any and all non-privileged materials that were created by Loeb, Block & Partners LLP and its attorneys regarding the relationship between Cooper Fund and Humberto Jr. dating back to January 1, 2001, is overbroad and risks undermining "the policy of promoting open communications between lawyers and their clients." *Kiobel*, 895 F.3d at 241 (quoting *App. of Sarrio, S.A.*, 119 F.3d at 146). Even if the Court could find a way to tailor the subpoena, the first *Intel* factor and this policy concern caution against granting Petitioner's discovery request.

Petitioner's request for unlimited authority to discover any relevant material within this District from yet unnamed parties is also unjustifiably broad. Petitioner has not provided the Court any clue as to what he might be seeking or any basis upon which to evaluate the potential benefit or burden of permitting Petitioner to seek discovery in this manner.

### 4. The Court Declines to Vacate Its Order Authorizing the Subpoena of Financial Institutions

Petitioner has subpoenaed several nonparty financial institutions for information regarding the transactions of Humberto Jr. and his children. Petitioner seeks the information to "confirm Humberto Jr.'s involvement in Cooper Fund, and determine whether he is the beneficial owner" of the Cooper Fund.[17] Pet. at 13. This information may be valuable to Petitioner, as it could yield evidence of a financial relationship between Humberto Jr. and the Cooper Fund. The financial institutions have not exercised their right under Federal Rule of Civil Procedure 45(d)(2)(B) to object to the subpoenas, and indeed, Petitioner suggests that he has already received some information from the third-party financial institutions in response to his subpoenas. *See* Pet. Resp. to Intervenors at 8. Accordingly, the Court finds that the burden imposed upon the financial institutions by the subpoenas is not sufficient to warrant vacating the

---

[17]   Frederico seeks information regarding the transactions of Humberto Jr.'s children because of their suspected involvement in the Cooper Fund. *See* Pet. at 9.

14

portion of the September 16, 2021, Order authorizing Petitioner to subpoena the financial institutions. Furthermore, Petitioner's subpoena of bank records raises no privilege issues, unlike Petitioner's subpoena of Respondents. *See United States v. Miller*, 425 U.S. 435, 440–41 (1976) (holding that bank customers have no reasonable expectation of privacy in the financial records kept by their banks).

The Intervenors request permission to inspect any materials already produced by subpoenaed parties. Intervenors Mem. at 22. Petitioner argues that, because the Brazilian courts have sealed materials filed as part of the foreign civil suit,[18] Intervenors should not be allowed to inspect any materials already produced out of comity for the Brazilian court's ruling. *See* Pet. Resp. to Intervenors at 10–11. Even if Petitioner's argument regarding comity were persuasive, neither Petitioner nor the Brazilian court's decision granting Petitioner's request to seal suggests the order to seal prevents the Intervenors, who are parties to the Brazilian suit, from inspecting documents regarding their own financial information. *See id.*; Resp'ts Supp. Br. Ex. 1 at 3.

The Court expects the parties will work cooperatively to allow the Intervenors to inspect any produced materials. *See In re Hornbeam*, 2015 WL 13647606, at *9 (intervenor had the right to inspect materials produced through discovery authorized pursuant to a § 1782 application filed in contemplation of a foreign civil suit) (citing Fed. R. Civ. P. 45 advisory committee's note). Petitioner must "make reasonable provision for prompt access" to enable Intervenors to inspect any materials already produced. Fed. R. Civ. P. 45 advisory committee's note.

---

[18] Petitioner argued, in what strikes the Court as a non sequitur, that the Intervenors should not be allowed to inspect materials already produced because Brazilian courts may seal materials filed in the civil suit. Pet. Resp. to Intervenors at 10–11. The Brazilian court order provided by Respondents and Intervenors in their supplemental briefing indicates that the Brazilian court granted Petitioner's request, and the suit is now under seal. *See* Resp'ts Supp. Br. Ex. 1 at 3. It is, nonetheless, unclear why sealing that litigation should mean that Intervenors should not have access to financial documents produced by financial institutions with which or through which they did business.

15

## CONCLUSION

For the foregoing reasons, the motion to intervene is GRANTED. The Respondents' and Intervenors' motions to vacate the Court's September 16, 2021, Order at docket entry 6, which granted Petitioner's § 1782 Application, and to quash the subpoenas are GRANTED as to the subpoenas served on the Respondents. The Respondents' and Intervenors' motion to stay discovery pending resolution of the case is DENIED as moot as the case is now resolved. The Clerk of Court is respectfully directed to terminate all open motions and to close the case.

**SO ORDERED.**

Date: September 6, 2022
      New York, NY

                                          **VALERIE CAPRONI**
                                          **United States District Judge**